Brian S. King, #4610
Brent J. Newton, #6950
Nediha Hadzikadunic, #15851
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PAUL H., and N. H., <br><br> Plaintiffs, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD of MASSACHUSETTS, and the HARVARD UNIVERSITY MEDICAL BENEFITS PLAN. <br><br> Defendants. | COMPLAINT <br><br> 2:20-cv-00318 - HCN |

Plaintiffs Paul H. ("Paul") and N. H. ("N."), through their undersigned counsel, complain and allege against Defendants Blue Cross Blue Shield of Massachusetts ("BCBSMA") and the Harvard University Medical Benefits Plan ("the Plan") as follows:

## PARTIES, JURISDICTION AND VENUE

1. Paul and N. are natural persons residing in Norfolk County, Massachusetts. Paul is N.'s father.

2. BCBSMA is an independent licensee of the nationwide Blue Cross and Blue Shield network of providers and was the third-party claims administrator for the Plan during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Paul was a participant in the Plan and N. was a beneficiary of the Plan at all relevant times.

4. N. received medical care and treatment at Fulshear Treatment to Transition ("Fulshear"). Fulshear is an inpatient treatment facility located in Texas, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. BCBSMA denied claims for payment of N.'s medical expenses in connection with their treatment at Fulshear. This lawsuit is brought to obtain the Court's order requiring the Plan to reimburse Paul for the medical expenses he has incurred and paid for N.'s treatment.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because BCBSMA does business in Utah through its network of affiliates. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"),

an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29

U.S.C. §1132(g).

## **BACKGROUND FACTS**

### **Fulshear**

9. N. was admitted to Fulshear on October 26, 2017, due to ongoing problems with drug

use, anxiety, sexual trauma, gender identity issues, eating disorder problems, and

incidents of self-harm.

10. In a letter dated November 1, 2017, BCBSMA denied payment for N.'s treatment at

Fulshear. The letter stated in part:

> We're not able to approve the request because your subscriber certificate indicates
> that you have no benefit for this service.

> In your *Benefit Description/Subscriber Certificate* Part 5 (Covered Services),
> under Mental Health and Substance Abuse Treatment, indicates: "No benefits are
> provided for: psychiatric services for a condition that is not a mental condition;
> residential or other care that is custodial care; and services and/or programs that
> are not medically necessary to treat your mental condition. Some examples of
> services and programs that are not covered by this health plan are: services that
> are performed in educational, vocational, or recreational settings; and "outward
> bound-type," "wilderness," "camp," or "ranch" programs. These types of non-
> covered programs may be in residential or nonresidential settings. They may
> include therapeutic elements and/or clinical staff services as well as vocational,
> educational, problem solving, and/or recreational activities. These programs may
> have educational accreditation. The staff may include some licensed mental health
> providers who may provide some therapy. No benefits are provided for any
> services furnished along with one of these non-covered programs. For example,
> no benefits are provided for therapy and/or psychotherapy furnished along with
> one of these non-covered programs."[1]

> Based on the information publically [sic] available to us about this facility,
> program, and information provided with this request the services requested are
> being rendered as part of Ranch Program. [sic]
> Therefore services rendered in this setting are specifically excluded from
> coverage in your BLUE CHOICE 2 *Benefit Description/Subscriber Certificate*.

---

[1] BCBSMA also sent a less detailed second letter dated November 1, 2017, which denied care by citing the
quotation above.

> There are other types of in-network treatment, that are outlined in your Benefit
> Description/Subscriber Certificate, that constitute covered services and are
> available as an alternative to attending Fulshear Ranch Academy. The other levels
> of care you may qualify for are: an inpatient psychiatric stay, acute residential
> treatment, partial hospital program, an intensive outpatient program and
> outpatient services provided by a clinician with an appropriate license. …

11. On April 23, 2018, Paul submitted an appeal of the denial of payment for N.'s treatment.
He contended that the treatment offered at Fulshear was a covered service under the
terms of the Plan and that it was a fully accredited residential treatment program and not
a "ranch program" as BCBSMA had dismissively claimed.

12. He contended that just because Fulshear called its campus "the ranch" did not
automatically mean that the facility was a ranch program. He noted that Fulshear's
website, as well as other publicly available information, correctly identified Fulshear as a
residential treatment program. He encouraged BCBSMA to evaluate more than just "the
name of the facility she was treated at."

13. He argued that the type of treatment N. received at Fulshear was a covered benefit under
the terms of the Plan, which clearly offered coverage for the mental health conditions N.
suffered from. He asserted that BCBSMA was twisting the wording of the Plan's
exclusion of custodial care to justify its denial of N.'s treatment. He quoted the Plan's
definition of custodial care and argued that it was evident from N.'s medical records, as
well as her treatment plan, that her time at Fulshear was not custodial in nature. He also
included a letter of medical necessity from one of N.'s therapists which reiterated that
Fulshear did not provide custodial services, such as assistance with feeding or bathing.

14. He contended that Fulshear fit the Plan's definition of an intermediate level treatment
facility. He argued that Fulshear offered treatment which was consistent with generally

accepted standards of medical practice, and that its employees were appropriately licensed and qualified. He pointed out that Fulshear was accredited by a national organization, the Joint Commission on Accreditation of Healthcare Organizations, which he stated was a certification that was very difficult to achieve and was only offered to facilities meeting "an extremely high standard of care."

15. Paul argued that BCBSMA's denial violated federal statutes, including MHPAEA. He wrote that MHPAEA compelled insurers to offer coverage for their mental health services "at parity" with equivalent levels of medical or surgical services. He identified skilled nursing and rehabilitation facilities as some of the medical or surgical analogues to N.'s treatment.

16. He took issue with BCBSMA's use of the term acute residential treatment. He pointed out that this contradicted the definition of residential treatment as defined by the terms of the Plan, the mental health field at large, and MHPAEA's final rules. He argued that Fulshear was a subacute facility and that it did not offer any acute services. He further argued that the term acute residential treatment was a misnomer and was "on its face, without meaning within the mental health and substance abuse treatment community."

17. The terms of the ERISA plan document providing coverage to Paul specifically state that BCBSMA covers "intermediate" inpatient mental health and substance use disorder treatment and "may include (but is not limited to) … acute residential treatment …."

18. Paul contended that BCBSMA could not claim that it covered intermediate level mental health services if in practice it only covered acute treatment. He termed this as a blatant contradiction and contrary to generally accepted standards of medical practice. He also

claimed that it constituted a nonquantitative treatment limitation in violation of

MHPAEA.

19. Paul also stated that Massachusetts had its own parity laws to which BCBSMA and the

Plan were subject which also mandated that coverage be offered for N.'s treatment.

20. He requested that in the event that BCBSMA did not pay the claim that it provide him

with a copy of all documents under which the Plan was operated, including all governing

plan documents, the Certificate of Coverage, any insurance policies in place for the

benefits he was seeking, any administrative service agreements that existed, the Plan's

mental health and substance abuse criteria, the Plan's criteria for skilled nursing and

rehabilitation facilities, and any reports from any physician or other professional

regarding the claim. (collectively the "Plan Documents")

21. In a letter dated May 17, 2018, BCBSMA upheld the denial. The letter stated in part:

> An excerpt from Fulshear Treatment to Transition's website describes The [sic] Ranch program as follows: "Fulshear is on 34 acres we call The Ranch… Physical exercise is a primary part of ranch life. Tending the horses, going off-campus to the gym and other activities help you renew your body and restore your physical health… Each day, you'll help take care of the animals and enjoy breakfast together before tending to responsibilities like chores and personal hygiene…We optimize the schedule to nourish your mind, body and soul, building into each day therapy, meditation, academics and healthy education. Staff lead these groups in the morning, during exercise time, horseback riding and life skills …We encourage bonding through cooking and meal preparation, crafts and games, and Girl's Night Out off campus outings. To ensure a connection to family is maintained, a designated time is set aside every day for emails or phone calls." Based on this description, services provided at Fulshear Treatment to Transition do not meet our clinical criteria standards as an acute residential treatment facility and are specifically excluded from coverage in your Blue Choice Plan 2 Benefit Description.
>
> There are other types of in-network and out-of-network treatment that are outlined in your Benefit Description, that constitute covered services and were available at the time you began attending Fulshear Treatment to Transition. The other levels of care you may have qualified for are: an inpatient psychiatric stay, acute

residential treatment, partial hospital program, an intensive outpatient program and outpatient services provided by a clinician with an appropriate license.

We considered the information that you presented; however, as noted your plan states that "No benefits are provided for: psychiatric services for a condition that is not a mental condition; residential or other care that is custodial care; and services and/or programs that are not medically necessary to treat your mental condition. Some examples of services and programs that are not covered by this health plan are: services that are performed in educational, vocational or recreational settings; and 'outward bound type,' 'wilderness,' 'camp,' or 'ranch' programs. These types of non covered programs may be in residential or non-residential settings. They may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities, These programs may have educational accreditation. The staff may include some licensed mental health providers who may provide some therapy. No benefits are provided for any services furnished along with one of these non covered programs. For example, no benefits are provided for therapy and/or psychotherapy furnished along with one of these non covered programs."

The plan excludes coverage for all care provided in a wilderness and/or ranch program setting. The plan excludes any coverage for residential, recreational, educational, or other custodial care provided in educational, vocational or recreational settings including room and board not associated with inpatient hospital care and all care provided in a wilderness based setting. For example, the plan excludes coverage for "[c]lub membership fees" and "educational, vocational, or psychosocial counselling" not associated with outpatient cardiac rehabilitation (page 34); "meals, personal comfort items, and housekeeping services" or custodial care associated with home health care (page 38), and the plan excludes coverage for "exams that are needed: to take part in school, camp, and sports activities" (page 50).

Please note that the claims submitted by Fulshear Treatment to Transition only seek coverage for room and board. General room and board is not covered in your plan. Room and board in this instance indicates that you are living at Fulshear Treatment to Transition. It is not part of a covered service, such as a hospital stay, where room and board constitutes an inpatient medical service. Inpatient services are only covered when you have a benefit for those services and pre approval is received for those services as outlined in your plan. See pages 44 of the Benefit Description. No pre-approval was received for these services.

Please be aware that although you may have resided in or at a ranch and/or wilderness program, these services are not the type of residential programs which are covered by your plan. Please also be aware that, while denying this claim since the services do not constitute a covered benefit, we are not making a medical necessity judgment about the type of care that you qualified for at the time that you entered Fulshear Treatment to Transition. …

22. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

23. The denial of benefits for N.'s treatment was a breach of contract and caused Paul to incur medical expenses that should have been paid by the Plan in an amount totaling over $95,000.

24. BCBSMA failed to provide the Plaintiffs with a copy of the Plan Documents, including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities in spite of Paul's request.

### FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

25. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSMA, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

26. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

27. The denial letters produced by BCBSMA do little to elucidate whether BCBSMA conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled. BCBSMA failed to substantively respond to the issues presented in Paul's appeals and did not meaningfully

address the arguments or concerns that the Plaintiffs raised during the appeals process.

28. While BCBSMA did state that it had considered the information presented in the appeal, it then proceeded to mostly quote the same portions of the Plan it had relied upon in the initial denial without providing any analysis as to why they were applicable.

29. BCBSMA and the agents of the Plan breached their fiduciary duties to N. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in N.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of N.'s claims.

30. The actions of BCBSMA and the Plan in failing to provide coverage for N.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

31. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

32. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

33. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also

makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

34. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

35. The explicit language of the SPD, one of the governing plan documents, state that medically necessary services are "Furnished in accordance with generally accepted standards of professional medical practice (as recognized by the relevant medical community)."

36. The medical necessity criteria used by BCBSMA for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

37. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for N.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does BCBSMA exclude or restrict coverage of medical/surgical conditions by imposing acute care requirements for a sub-acute level of care. To do so, would violate not only the terms of the insurance contract, but also generally accepted standards of medical practice.

38. In its review of N.'s claims, BCBSMA's reviewers improperly utilized acute medical necessity criteria to evaluate the non-acute inpatient residential treatment that N. received. BCBSMA's improper use of acute inpatient medical necessity criteria is plainly evident from the denial letters. This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that N. received. The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits.

39. While BCBSMA explicitly acknowledges its use of acute criteria by claiming to offer coverage for "Acute residential treatment" in the SPD, it does not define other intermediate levels of care as an acute service. BCBSMA defines intermediate care as more intensive than traditional outpatient care, but not severe enough that 24 hour hospitalization is needed. Only in the case of residential treatment is the term "acute" used for this level of care.

40. The treatment provided in an acute care environment is necessarily distinct from treatment provided in a non-acute environment. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

41. The Defendant cannot and will not deny that use of acute care criteria, either on its face or in application, to evaluate sub-acute treatment violates generally accepted standards of medical practice. They must and do acknowledge that they adhere to generally accepted standards of medical practice when they evaluate the medical necessity criteria of both mental health/substance use disorders and medical/surgical claims.

42. When BCBSMA and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. BCBSMA and the Plan evaluated N.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

43. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and BCBSMA, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

44. BCBSMA and the Plan did not produce the Plan Documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that BCBSMA and the Plan were not in compliance with MHPAEA.

45. The violations of MHPAEA by BCBSMA and the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendants violate MHPAEA;

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c)  An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d)  An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e)  An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and other BCBSMA insured and administered plans as a result of the Defendants' violations of MHPAEA;

(f)  An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g)  An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h)  An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

46.  In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1.  Judgment in the total amount that is owed for N.'s medically necessary treatment at Fulshear under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2.  Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3.  Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4.      For such further relief as the Court deems just and proper.

DATED this 15th day of May 2020.

By    <u>s/ Brian S. King</u>
                Brian S. King
                Attorney for Plaintiffs

County of Plaintiffs' Residence:
Norfolk County, Massachusetts